## MALPRACTICE BY AN ATTORNEY.

Common Pleas Court of Williams County.

ANNA TRESSLER LONG v. CHARLES A. BOWERSOX.*

Decided, January 25, 1909.

*Attorney and Client—Action Against Attorney for Malpractice Barred by the One Year Statute of Limitations—Failure to Inform Client of Facts Acquired from a Former Client not Malpractice—Essential Allegations of a Petition for Malpractice—Facts which are Insufficient upon Which to Base a Petition for Malpractice—And Insufficiency of Prior Averments Introduced into Subsequent Causes of Action by Reference Only.*

1. Section 4983, Revised Statutes, prescribing a one year's limitation for the bringing of an action for malpractice applies to attorneys at law as well as physicians and surgeons.

2. One retaining an attorney at law to secure for her the administration of her deceased husband's estate under Section 6005, Revised Statutes, is not entitled to information acquired by her counsel in a prior professional relation concerning the execution of a will by a brother of her husband in which he devised his property to his mother, notwithstanding the fact that such knowledge and its consequent legal advantage to plaintiff if known to plaintiff might have enabled her under Section 5943 to prevent the beneficiary thereof from taking under the will for failure to probate it until after the mother's rights were forfeited, and have saved her expense of litigation by reason of the probate thereof. Nor can such litigation be deemed the obvious and natural sequence of the refusal of the probate court to appoint her administrator upon which to found an action for malpractice without other facts to explain how such damages flowed from the facts complained of.

3. In an action for malpractice against an attorney at law the pleader must allege: (1) the relation between the parties; (2) pertinent facts which disclose the dereliction of duty by the defaulting party and support the complaint of injury; (3) negligence with reference to such facts of a character to suggest that the injury may have flowed therefrom; and (4) allegations of damages constituting the proximate result of the negligence alleged; and unless the connection between the successive propositions and elements be apparent from the statement of them, the pleading must inform the court by additional averments how one element flows into an-

* Error not prosecuted.

other. That is, the *nexus* must be obvious or specially pleaded.

4. A petition in an action for malpractice against an attorney at law, alleging his retainer to secure plaintiff the administration of her husband's estate; the death of her husband's brother testate, devising his ancestral property to his mother who failed to probate the will until after the statute of forfeiture had run; the attorney's assistance in probating such will; his having knowledge of the existence of the will and neglecting to inform plaintiff and the court of the fact of forfeiture; and failure thereby to secure the coveted appointment and damages as a result thereof, does not state sufficient facts to sustain the action.

5. Incorporation of the averments of prior causes of action into another cause of action by reference only renders such cause of action specially vulnerable to demurrer, if the facts in such references are not otherwise pleaded and are essential to such cause of action.

*B. F. Ritchie,* for plaintiff.

*Gaudern & Estrich, Newcomer & Gebhard* and *O. C. Beechler,* contra.

KILLITS, J.

This cause is before the court on general and special demurrers to the petition. The petition sets out three alleged causes of action. For her first cause of action plaintiff says that she is the widow of John P. Long, deceased, and that in June, 1906, being herself unversed in the law and procedure therein, she employed defendant to attend to all her legal business generally, and that such employment was by defendant accepted and entered upon; that defendant was then, had been for a long time and still is, engaged in the practice of law in Williams county, Ohio, as a member of the bar of this state. That in the month of December, 1906, John P. Long, her husband, being then deceased, "the defendant having been then continuously in the employ of the plaintiff since the said date first aforesaid, she instructed the defendant as attorney to prosecute a motion and application on behalf of this plaintiff in the probate court of Williams county, Ohio, for the appointment of this plaintiff as administratrix of the estate of the said John P. Long, aforesaid''; that defendant filed such application December 27, 1906, and thereafter, in all proceedings following the same, he acted as

plaintiff's attorney.   That at said last named time "defendant had within his personal knowledge certain information," hereinafter set forth in this pleading, which it was important that this plaintiff should   receive, and the plaintiff says, that "this defendant willfully concealed from the plaintiff the said information which was within his personal knowledge, and that this defendant was thereby guilty of fraud upon the plaintiff, and this plaintiff further says, that the defendant could, by the exercise of due diligence, care and skill, and by invoking to the benefit and use of this plaintiff the said information that was within his knowledge, have obtained the allowance of said motion and application and the appointment of this plaintiff as administratrix as aforesaid, but that he negligently and unskillfully conducted said proceedings aforesaid; that said application was not granted, whereby plaintiff was deprived of her right to be appointed as said administratrix, and was put to great costs and expense and greatly damaged, as will more particularly appear hereinafter in this pleading."

The petition, in this first cause of action, details the death of her husband's father, George E. Long, and the terms of his will, all of which is fully covered by the opinion of this court at the February, 1908, term of this court, in *Gillis* v. *Long*, 8 N. P. —N. S., 1, wherefore we will not quote such part of the pleading here, and proceeds to aver that Parker W. Long, her husband's brother, executed a will in July, 1902, wherein he attempted to give all his property absolutely to his mother, Harriet Long; that the defendant drew this will for Parker and was one of the subscribing witnesses, and read the will to the testator and to Harriet, and then and there delivered the same to Harriet; that Parker died November 30, 1902, leaving this will in the possession and control of Harriet, and that at said time there were living of the Long family, the mother Harriet, John, and John's wife, this plaintiff; that John P. Long died in August, 1906, and that a dispute having arisen between plaintiff and Harriet respecting plaintiff's claims in John's estate, November 12, 1906, Harriet caused the will of Parker to be offered for probate, but failed to cause plaintiff to be notified of such intended probate, and that the will was admitted to probate November 14, 1906,

without the knowledge of plaintiff; "that this defendant knew that this plaintiff had not been made a party to the probating of said paper writing aforesaid, and that this defendant knew that this plaintiff had no knowledge of the probating thereof; and that this defendant knew that the interests of this plaintiff in the estate of the said John P. Long aforesaid were materially affected by the probating of said paper writing aforesaid, and that this defendant notwithstanding the premises did appear in open court and assist in the probating of said paper writing aforesaid; and that this defendant did willfully conceal from the plaintiff the knowledge the defendant had of the paper writing aforesaid and of its having been admitted to probate."

This cause of action then sets up the fact that when her application for letters of administration was filed with the probate court by defendant the law of Ohio provided (Sec. 5943, Rev. Stat.), that a devisee who had knowledge of the will under which he was beneficiary, or who had the same in his power to control, should lose his devise if he neglected to cause the will to be offered for probate within three years after testator's death, and that the defendant herein then had knowledge of such law, and that he then knew that the will of Parker had been in the power and control of Harriet for more than three years after Parker's death, and that she was the sole devisee and legatee thereunder, and that she had failed to cause it to be offered for probate for more than three years, "and that notwithstanding the premises this defendant carelessly, negligently and willfully failed to acquaint plaintiff with the information aforesaid that was within his knowledge, and this defendant carelessly, negligently and willfully failed to acquaint plaintiff with the provisions of said section of the statutes aforesaid, or to invoke the same in said proceedings to her use and benefit, by reason whereof the probate court aforesaid refused to allow the said application, and did refuse to appoint this plaintiff administratrix as would not have been the case had defendant not carelessly and negligently acted as aforesaid"; that by reason of this state of facts plaintiff was put to the expense of $708 in court costs and traveling expenses in the endeavor to secure the administration of this estate, and also, because of the premises "a long continued expensive and

unnecessary litigation ensued to this plaintiff," to plaintiff's damage in the sum of $6,115.30, "in the employment of attorneys, traveling expenses, court costs, interest on moneys and loss of time from her legitimate employment."

"For a second cause of action the plaintiff, repeating all and singular the allegations in the first cause of action herein," avers that one Gillis, having become the administrator of her husband's estate, made application, to the defendant's knowledge, to sell certain of the real estate devised to her deceased husband, John P. Long, and that said application was granted, and that, at such time, October 17, 1907, the law of Ohio, to defendant's knowledge, provided that lands to be sold on the application of an administrator of an estate should be offered upon terms of one-third cash, and one-third in one year and one-third in two years, and not otherwise, yet, to the knowledge of defendant, Gillis caused the order of sale to be entered for cash in hand, and that "defendant carelessly, negligently and purposely failed to advise plaintiff" of the statute or to invoke the same to the use and benefit of plaintiff, and that "by reason of the premises this plaintiff, upon discovery of the character and terms of said order of sale aforesaid, was put to great expense in the sum of $160 for attorney's fees, traveling expenses and loss of time from her legitimate employment in securing the vacation of said order of sale aforesaid."

"For a third cause of action the plaintiff, repeating all and singular the allegations in the first and second causes of action herein, says that the aforesaid Denmark farm" was sold upon the order of sale January 25, 1908, the plaintiff purchasing one of the parts, and that the administrator applied to the court February 14, 1908, for confirmation, but that defendant, at the time set for hearing of the motion for confirmation, "did purposely, and willfully by misrepresentation to the court, and without reason, and without the authority of the plaintiff, cause the hearing of said application to be postponed until March 9, 1908, by reason of which plaintiff was damaged in the sum of to-wit, $70 for loss of time from her legitimate employment."

The prayer is for judgment against defendant in the sum of $7,053.30, the aggregate of the damages claimed in the three causes.

The special ground of demurrer raises the statute of limitations to the first and second causes, and the position of defendant is that Section 4983, which limits to one year from accrual of right to sue actions ''for libel, assault, battery, malicious prosecution, false imprisonment or malpractice,'' applies to defeat plaintiff, the alleged negligence in the first cause having occurred in November, 1906, and that relied on in the second, October, 1907.

To this plaintiff's counsel insists that the word ''malpractice'' is limited to describing an action upon the negligence of a physician or surgeon, and is not used with reference to the right to damages in a client against his attorney for negligent conduct of the business in hand. In this behalf we are cited to the definitions in Webster, Standard Dictionary, Century Dictionary, Rapalje and Lawrence's Law Dictionary, Bouvier's Law Dictionary, Jacob's Fisher's Digest, and the first edition of American and English Encyclopedia of Law. It is true that in all these works of definition, to which may be added Anderson's Law Dictionary, the word is treated as referring especially to negligence of physicians and surgeons. Counsel for plaintiff also refers us to several decisions which are not very decisive, as they define particularly what would be malpractice in a physician and do not necessarily exclude the use of the word with reference to professional negligence of attorneys at law.

On the other hand counsel for defendant cite, Green and Kelly's Ohio Pl. & Prac., 61; Bates' Pleading (1st Ed.), 288; 2 Bates' Pleading (2d Ed.), 987; 1 Kinkead's Code Plead., 757; 1 Bates' Ohio Dig., Col. 1563; the American Digest, under the general title of ''Attorney and Client''; and also under the title of ''Malpractice''; the Century Digest, under the title of ''Malpractice,'' and also in Vol. 5, Col. 1669; 19 Am. & Eng. Enc. Law (2d Ed.), title, ''Malpractice''; 8 Michie's Ohio Enc. Dig., title, ''Malpractice''; 5 Laning's Ohio Cyc. Dig., title, ''Malpractice,'' and 6 Thompson, Negligence, 962, in which the word is used as referring to the negligence of both physicians and attorneys.

In view of this greatly preponderating mass of authority, especially from the Ohio practice, we are inclined to think that

the word as found in Section 4983, Revised Statutes, refers to action against attorneys as well as against physicians. The word was inserted in the statute for the first time in an amendment adopted in 1894. At that time Green and Kelly's Ohio Pleading and Practice was in extensive use by the Ohio Bar, while Bates' Pleadings and Bates' Digest were found in every law office in the state that made any pretense in the practice of the law. In construing wills it is a settled rule of interpretation that where any word or phrase has received special legal meaning such definition shall be given to it, unless it is plain that testator did not employ it in that sense. So, also, it is settled that when words have a restricted or peculiar meaning when used with reference to any particular trade or business, they are to be given that special meaning in the construction of any contract using them and pertaining to such trade or business, unless there is something showing that they are to be given their ordinary definitions, and while we have no particular authority now in mind we are sure the same rule applies in construing a statute, and that if a word there appears which has a meaning different in any manner in law from common use, it shall be given its legal meaning, unless the contrary is indicated or necessary. And, as applied to this word "malpractice" this position appeals to common sense. The negligence of an attorney respecting the interests of his client does not differ in character from that of a physician with reference to his patient. Judge Cooley, Torts (1st Ed.), 648; Cooley, Torts (2d Ed.), 777, says:

"It is the misfortune of members of the learned professions that, in a very considerable proportion of all the cases in which their services are employed, their efforts must necessarily fall short of accomplishing the purpose desired, so that, if they do not disappoint expectations, they must at least fail to fulfill hopes. For this reason they are peculiarly liable to the charge of failure in the performance of professional duty, and it is important to know exactly what it is that the profesional man promises when he engages his services. As the promise is not different in the case of the physician and surgeon from what it is in the case of the attorney, solicitor and proctor, one general rule may be given which will apply to al'."

Any work of reference, or special text book on the subject, is authority that the right of action arises in precisely the same way against attorneys for negligence as against physicians, that it is for breach of the contract implied in the acceptance of the engagement that the professional man will employ that degree of skill ordinarily exercised and enjoyed by the profession generally, and the authors of forms of pleading cast the models for declarations against members of either profession on the same lines. Nash, Pl. & Prac., 233.

Counsel for plaintiff suggests that the right of action for negligence of one's attorney is an action upon an implied contract, with which we agree, and that it is therefore under the six year limitation. It would follow, then, that an action against one's physician for negligence, being of precisely the same nature, would, but for the amendment of 1894, be under the six year limitation also. Hence, we are forced to the conclusion, if the word "malpractice" does not apply to both kinds of action, that the Legislature, in amending Section 4983, in 1894, undertook to discriminate in favor of the medical profession against that to which doubtless a great many of its members belonged. No reason is conceivable why a physician should live down liability for his blunders in one year while a lawyer should fear his luckless client's shadow for five years more. Another rule of construction is that it is presumed that the Legislature did not intend an unusual thing.

We might suggest here that in his index to his work on attorneys, which counsel for plaintiff cites in another part of his brief, Mr. Weeks uses the word "malpractice," as the term applicable to negligence of attorneys, and that Judge Maxwell, in his code pleading, uses it exclusively with reference to attorneys.

Our conclusion is, that this word, whatever definition the dictionaries gave it, had a particular legal meaning in Ohio, when the section was amended, with which the Legislature dealt, and that actions against attorneys were included in that amendment, wherefore the demurrer to the first and second causes of action should be sustained because the time limited within which they should have been brought has passed.

For reasons given in our discussion of the case of *Mitchell* v. *Long,* it seems profitable that this petition should also be con-

sidered upon the merits as challenged by the general demurrer, and .we now proceed to discuss the first cause of action.

It is plain that, in stating a cause of action in negligence such as this, the pleader does not meet the situation unless he sets up, first, a relation between the parties out of which a cause of action is possible to arise; second, such pertinent facts as may be in hand touching which a dereliction of duty by the defaulting party toward the party complaining may be seen to support a complaint of injury; third, negligence with reference to such facts of a character to suggest that injury may flow therefrom, and, fourth, an allegation of damage that may be seen to be the proximate result of the alleged negligence. Unless these four elements are all present in the pleading it is subject to a general demurrer. In this first cause of action we have the first element met by the showing that a jural relation existed between the parties, but have we any of the other essentials pleaded with the facts necessary to complete a case? We might modify the second essential, or the statement of it, by saying that if the facts upon which the predicate of negligence is laid do not of themselves suggest that a dereliction of duty with reference to them would be negligence, additional facts showing that peculiar relation of such matters to the case must be averred, and we may say that it is not sufficient to say simply that injury flowed from an alleged act of negligence unless the nature of the negligence is such as to necessarily involve an injury. If the probability that damage will flow therefrom is not apparent from a narration of the facts constituting negligence, additional facts must be pleaded showing in what manner and why the alleged damages are the proximate result thereof. In other words, unless the connection between the successive propositions and elements is apparent from the statement of them, the pleading must inform the court how one element flows into the other by additional averments. The *nexus* must either be obvious or specially pleaded.

Tested by this rule, how is it with this first cause of action? It informs the court that plaintiff's husband was a beneficiary under his father's will, as was his brother Parker; that Parker died testate, devising all his property to Harriet; that this fact was known to defendant who drew the will; that Harriet neg-

lected to probate the will for more than three years, subjecting her to the forfeiture of her devise, and that this fact was known to defendant, and that he also knew of the statute of forfeiture; that after he had entered into the relation of attorney to plaintiff, defendant, presumably in his character of witness, assisted Harriet in the probate of this delayed will, and neglected to tell. plaintiff about it; that thereafter defendant acted as counsel for plaintiff in an effort to get her the administration of her husband's estate, but failed either to tell plaintiff of the statute of forfeiture in question or of the fact that Harriet was subject to it, and failed to use that fact before the probate court, wherefore the probate court refused her the preference as administratrix of her husband's estate; that, had this plight of Harriet's been made known to the probate court, plaintiff would have received the coveted appointment; that all this was negligent and careless on defendant's part, and because of it plaintiff suffered damages in the amount of more than seven hundred dollars as a result of her abortive effort to be given the administration, and entered into an ill-advised litigation which cost her over $6,000 more.

It is not clear whether plaintiff relies very much, if at all, upon the fact that the defendant did not use his knowledge to prevent the probate of Parker's will, but if that is one of the grounds it adds nothing to this cause of action, for the section of forfeiture, Section 5943, Revised Statutes, has nothing to do with the probate of a will under its terms; facts which come under it and fully within its provisions can not be used to defeat probate.  We stated our position fully touching that question in the other case, *Mitchell* v. *Long,* and we are still satisfied with that construction of the function of this statute.  Nor has plaintiff any right to complain that defendant did not give her information which he acquired because of his professional connection with the preparation of Parker's will.  His duty to keep those facts to himself and to refrain from using them in any way adverse to the fruition of Parker's testamentary desires was superior to any duty he owed his later client, the plaintiff.  Perhaps after Parker's will was probated, and the delay was a matter of record, defendant might with propriety have brought that fact and the statute to the attention of the

probate court if he deemed these matters relevant to the contest over the administration, but we are unable to see what these
facts had to do with that proceeding or how, had they come to
the court's attention and had been vehemently urged upon it,
they could have affected the result. The *nexus* here is surely
wanting.

Examining the statute, we find that plaintiff, as widow of
her deceased husband, had priority to the. administration of his
estate (Section 6005, Revised Statutes) unless she came. within
the provisions of the third clause of the statute, which excepts
from the preference one who is either incompetent, or evidently unsuitable for the discharge of the trust, or dilatory in
pressing his claims. What would be unsuitability is perhaps
defined by Section 6017, setting forth the reasons effectual for
the removal of an administrator. It is the practice to read these
statutes together for that purpose. The probate court must.
have found plaintiff to come within one of these categories,
otherwise its refusal to appoint her would have been reversible
error, and without some additional averment setting forth an
explanation of how knowledge of the delay in question and of
how the forfeiture statute would have affected plaintiff's status
at this time toward the estate, we are in the dark to understand
how these matters would have caused the probate judge to deem
her a proper person for the administration rather than otherwise. Precisely the same difficulty arises with reference to the
claim that these untoward results involved plaintiff in large expense for useless litigation. A good big lawsuit is not the obvious and natural sequence of a refusal of a probate court to appoint one an administrator, except perhaps by way of appeal
or error from his decision. It is obvious, from the character of
the pleading, that the unfortunate litigation which is alleged to
have cost $6,000 was collateral to the proceeding in the probate
court, and this averment is not complete as a statement of proper
damages without an explanation of how it happened that these
damages flowed from the failure of defendant to tell the plaintiff and the probate court about the law of forfeiting devises
and about Parker's will, and from the failure of defendant to
have plaintiff appointed administrator. We are of the opinion

also, that the proximation of the damages alleged by way of the expenses of prosecuting the suit to be administratrix is not clear.

A demurrer admits all facts in the pleading attacked which are well pleaded, but the fact that there is room and provision for a demurrer in the practice presumes that a pleading may be filed which is defective in its statement of a cause of action, and a demurrer never operates to supply a cause of action where one did not exist before. We hold that this cause of action is obnoxious to a general demurrer.

The second and third causes of action are specially vulnerable to a general demurrer in that each attempts to incorporate the averments of the preceding causes by reference only. This practice has been repeatedly condemned by the Supreme Court, and demurrers on that ground are universally allowed. The Supreme Court in *Eureka Fire & Mar. Ins. Co.* v. *Baldwin*, 62 Ohio St., 368, one of four or five cases on the subject, says on page 384:

"The insurance companies in the second defense of their answer refer to the admissions and denials of their first defense, and make the same a part of the second as though fully pleaded at length therein. This is bad pleading, and such reference and taking of one cause of action in a petition or ground of defense in an answer to a former one should be stricken out. Each cause of action or ground of defense should be separately and independently stated so as to enable the opposite party to take issue by demurrer or otherwise without being hampered by another cause of action or ground of defense."

Reading the averments of the former causes, referred to into the second and third causes, we are of the opinion that each thereof is also subject to a general demurrer, in which behalf we would make the same criticisms which were offered to the first. It is not apparent from this pleading how plaintiff would have been damaged had a sale of the lands in question been made for cash, nor is it plain why the postponement of the confirmation of sale should have involved her in any expense. If these damages were the proximate results of these facts then the matters which brought them into such proximity should have been set out. As to each cause, also, there should have been a

fuller statement of the manner in which the expenses complained of were necessarily incurred.

Demurrer sustained.