**CENTURY MEDIA CORPORATION,**
**Plaintiff,**

v.

**CARLILE PATCHEN MURPHY & ALLISON, et al., Defendants.**

**CARLILE PATCHEN MURPHY & ALLISON and Michael E. Igoe, Defendants and Third–Party Plaintiffs,**

v.

**WENDY'S FOOD SYSTEMS, INC., Third–Party Defendant.**

No. C2–88–886.

United States District Court, S.D. Ohio, E.D.

Aug. 29, 1991.

1048

Alan B. Parker, Reminger & Reminger, Cleveland, Ohio, for plaintiff.

---

John C. Nemeth, Columbus, Ohio, for defendants.

## ORDER

GEORGE C. SMITH, District Judge.

This matter is before the Court pursuant to Defendants Carlile Patchen Murphy & Allison's (hereinafter "CPM & A") and Michael H. Igoe's (hereinafter "Igoe") June 14, 1989, Motion for Summary Judgment; Defendant Domenic Federico's (hereinafter "Federico") March 21, 1990, Motion for Summary Judgment and Plaintiff Century Media Corporation's (hereinafter "Century") February 26, 1990, Motion for Summary Judgment On Liability Only. Memoranda Contra has been filed by each respective party as to the relevant motions. On December 5, 1990, a Status/Settlement Conference was held wherein the parties discussed their respective positions and were advised as to the Court's need for supplemental memorandum on an agency law issue.

## FACTS

On August 22, 1988, the plaintiff filed the instant action against Defendants Igoe, CPM & A, and Domenic Federico.[1] In this matter the plaintiff alleges that the defendants, through their actions, inactions, conduct and misconduct, acted negligently in their representation of the plaintiff in the Mahoning County Common Pleas case of *WKBN Broadcasting Corp., et al. v. Wendy's Food Systems, Inc., et al.*, 87–CV–420 (hereinafter "*WKBN v. Wendy's, et al.*"). To fully understand the instant case it is necessary to digress to the facts of the *WKBN v. Wendy's, et al.*, case. In *WKBN v. Wendy's, et al.*, the plaintiff and the defendants in the instant case were co-defendants. As co-defendants a joint and several judgment was taken which has given rise to the case currently before this Court.

1. It should be noted that the appearance of Federico in the action is based upon his affiliation with Wendy's Food Systems, Inc. as an agent, officer or owner, and as an attorney that the plaintiff states was "of counsel" with Carlile Patchen Murphy & Allison at all times relevant to the instant action. Clearly this creates a precarious situation with regard to the respective positions, capacities and interrelationships of the defendants.

The case of *WKBN v. Wendy's, et al.* arose when Wendy's Food Systems, Inc., contacted Century Media Corp. to obtain advertising "air time". Wendy's Food Systems, Inc. (hereinafter "Wendy's") operates Wendy's Restaurants in the Youngstown, Ohio area. Century secured the requested advertising "air time" from various broadcasting companies, including WKBN Broadcasting Corp. Century contracted directly with the broadcasting stations for the advertising, and when the bill was not paid the broadcasting companies filed suit against both Wendy's and Century.

Defendant Attorney Michael H. Igoe and CPM & A became involved in the underlying action in March of 1987, when Attorney Igoe was requested by Domenic Federico, a defendant in the instant case and a principal in Wendy's Food Systems, Inc., to enter a defense on behalf of Wendy's and Century. Wendy's and Century had entered into an agreement wherein Wendy's agreed to "defend the Action on Century's behalf, by counsel of Wendy's designation, ..." (See Agreement attached to Defendant's Motion for Summary Judgment and entitled Exhibit A–1).[2]

Attorney Igoe entered an appearance on behalf of both Wendy's and Century in the underlying action. Attorney Igoe claims that he had occasion to speak with a representative of Century, specifically Attorney Larry Tofel, Century Media Corp.'s New York counsel. In Attorney Igoe's conversation with Attorney Tofel he claims that Tofel informed him that he "did not want to be bothered with the details of the lawsuit." Attorney Igoe claims that it is for that reason that he did not copy Attorney Tofel nor inform him of pleadings, progress, and other relevant information with relation to the underlying suit. Tofel vehemently denies having made such a statement.

Specifically, the plaintiff's in the underlying case propounded interrogatories to Wendy's and Century by serving a copy upon Attorney Igoe at CPM & A. Admittedly, Attorney Igoe did not forward copies of the interrogatories to Century. Instead, by the direction of Federico, on behalf of Wendy's, the interrogatories went unanswered.

On or about June 16, 1987, the plaintiff's in the underlying case filed a motion to compel answers to the interrogatories. Again, Attorney Igoe did not respond to the interrogatories nor did he respond to the motion to compel. According to Attorney Igoe, he was of the understanding that Wendy's was simply going to pay the outstanding debt, thereby rendering the underlying case and the pending interrogatories moot. Furthermore, he was allegedly told that since the bill would be paid shortly he was to keep his legal fees down by limiting his activity on the matter. Attorney Igoe admits that he did not inform Century of the motion to compel that had been filed.

On or about June 23, 1987, the Court of Common Pleas *ordered* that the outstanding interrogatories be answered on or before June 27, 1987. Again, Attorney Igoe did not see fit to either file answers or inform Century of his failure to do so. Instead, he simply disregarded a direct order of the court.

On or about July 6, 1987, the plaintiffs in the underlying action filed a Rule 11 motion for sanctions for the failure to comply with the court's order. A response to the motion was not filed, Century was not noti-

---

**2.** The Agreement between Wendy's and Century essentially provided as follows:

This will confirm our understanding pursuant to which, in consideration of your forebearance (sic) of asserting a cross-claim against us in the Action and for other good consideration, the receipt and sufficiency of which is hereby acknowledged, we have agreed as follows:

1. Wendy's Food Systems, Inc. ("Wendy's") hereby indemnifies and agrees to hold Century Media Corporation ("Century"), its officers, directors, stockholders, agents, employees, legal and personal representatives, harmless from and against any and all loss, cost, expense, claims, demands and liabilities, (including reasonable counsel fees and disbursements) in any way arising out of or relating to the Action.

2. Wendy's shall defend the Action on Century's behalf, by counsel of Wendy's designation, and shall pay all costs and fees incurred by said counsel.

\*   \*   \*   \*   \*   \*

fied as to the most recent revelation and still, the interrogatories went unanswered. The Common Pleas Court granted the motion for sanctions and declared that the facts sought to be established by the interrogatories were deemed established.

The plaintiffs, on July 20, 1987, moved for summary judgment. Attorney Igoe did not file a response to the motion, nor did he notify Century of the dispositive motion. With no action having been taken, on August 26, 1987, the Court entered summary judgment for the plaintiffs against both Wendy's and Century, jointly and severally, in the sum of $60,180.50 plus retroactive interest.

The day before the judgment was entered, Wendy's Food System, Inc., filed a petition in bankruptcy in the United States District Court for the Southern District of Ohio, Eastern Division. Presumably based upon Wendy's bankrupt status, the plaintiffs attempted to execute the judgment against Century. It was not until September 8, 1987, that Attorney Igoe informed Century that a judgment was currently pending against them.

Century retained new counsel shortly after receiving knowledge of the pending judgment against them. This was done in an effort to have the judgment set aside. The new counsel was successful in setting aside the judgment, however, the judge ordered that a bond in the amount of the judgment be posted. There is some disagreement as to why Century was incapable of posting the bond, nonetheless, the prevailing fact is that the bond was not posted and the judgment was reinstated.[3]

These facts have given rise to the instant case and motions. The Complaint was filed on August 22, 1988, wherein the plaintiff Century alleges legal malpractice in Count One; breach of a fiduciary duty in Count Two; misrepresentation and/or fraud in Count Three; and breach of contract in Count Four. The Court will now turn its attention to the standard for summary judgment to be applied to each of the respective motions.

### STANDARD OF REVIEW

In considering this motion, the Court is mindful that the standard for summary judgment "mirrors the standard for a directed verdict under [Rule 50(a)], which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citing *Brady v. Southern Ry. Co.*, 320 U.S. 476, 479–80, 64 S.Ct. 232, 234–35, 88 L.Ed. 239 (1943)). Thus, the Supreme Court concluded in *Anderson* that a judge considering a motion for summary judgment must "ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair minded jury could return a verdict for the plaintiff on the evidence presented." 477 U.S. at 252, 106 S.Ct. at 2512.

Rule 56(c) of the Federal Rules of Civil Procedure provides in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

In essence, the inquiry is whether the evidence presented a sufficient disagreement

---

**3.** Defendants Igoe and CPM & A claim in their motion for summary judgment that the bond was not posted "because there was no defense to the claims of the broadcasting companies, and Century Media Corporation knew that judgment would be satisfied by any bond it posted." (See Defendants Igoe and CPM & A's Motion for Summary Judgment, at p. 6) (citing the opinion of Defendant Igoe as provided in his sworn affidavit at paragraph 9(m)). In response, however, the Plaintiff Century claims that the bond was not posted simply because they were incapable of posting a fully collateralized bond due to the exhaustion of the company's credit lines. The plaintiff claim that the defendants were fully aware of Century's attempts to obtaining a bond, and that "their assertion that the failure was because [no] defense existed to the claim on Century Media's behalf is false and reprehensible." (See Opposition Memorandum of Century Media Corp. to Motion for Summary Judgment at p. 7).

to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2511–12.

Such an inquiry necessarily implicates the evidentiary standard of proof that would apply at the trial on the merits. As a result, the Court must view the evidence presented through the prism of the substantive evidentiary burden. Rule 56(e) therefore "requires the nonmoving party to go beyond the pleadings and by their own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file', designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish an element essential to that party's case, and on which that party will bear the burden of proof at trial". *Id.* at 322, 106 S.Ct. at 2552.

In *Banks v. Rockwell International N. Am. Aircraft Operations,* 666 F.Supp. 1053 (S.D.Ohio 1987) (Graham, J.), this district enunciated the importance of granting summary judgments in appropriate situations by stating as follows: "Although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* at 1056 (citing *Celotex Corp. v. Catrett,* 477 U.S. at 327, 106 S.Ct. at 2555, (quoting Fed.R.Civ.P. 1); *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512.

Thus, the mere existence of a scintilla of evidence in support of a plaintiff's claim is insufficient—there must be evidence upon which a jury could reasonably find for the plaintiff. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512. Having discussed the Rule 56 standard of review, the Court now turns to the merits.

## ANALYSIS

In the adjudication of civil law suits there is no case more difficult, complex and taxing than a claim of legal malpractice. In such a case the Court is often times faced with the task of not merely sitting in judgment of the case before it, but the Court must also weigh and determine the probable outcome of an underlying cause of action upon which the malpractice was allegedly performed. That is precisely the situation this Court has been confronted with for purposes of the three pending summary judgment motions. "The procedural tool for demonstrating trial level malpractice has been given the popular name of a 'suit within a suit.'" *Jablonski v. Higgins,* 6 Ohio Misc.2d 8, 10, 453 N.E.2d 1296 (Cuyahoga Cty. Cm.Pl.Ct.1983); *see also, Western & Southern Life Ins. Co. v. Selzer,* 23 Ohio C.C. (N.S.) 104, 34 Ohio C.D. 146, *aff'd without opinion,* 90 Ohio St. 411, 108 N.E. 1134 (1914).

In order to show legal malpractice the plaintiff is required to prove as follows:

1. There was an attorney-client relationship.

2. There were sufficient facts to show that the attorney's alleged misconduct caused the plaintiff's injury.

3. The attorney had breached his duty to provide competent legal services.

4. The damages which the plaintiff sustained were the proximate result of the attorney's alleged misconduct.

*Jablonski,* 6 Ohio Misc.2d at 10, 453 N.E.2d 1296 (citing *Long v. Bowersox* (C.P.1909), 19 Ohio Dec. 494, 500–501, 8 Ohio N.P.(N.S.) 249, as the first case to have stated the elements for a legal malpractice case). Furthermore, as each party has noted, an attorney is required to exercise the knowledge, skill, and ability ordinarily possessed and exercised by members of the legal profession similarly situated. *Minick v. Callahan,* 24 Ohio Ops.3d 104 (1979). The Court will first turn its attention to Defendant Attorney Igoe and CPM & A's motions for summary judgment.

## I. MOTIONS OF DEFENDANTS MICHAEL E. IGOE AND CARLILE PATCHEN MURPHY & ALLISON FOR SUMMARY JUDGMENT.

The defendants have set forth two defenses to the plaintiff's claims upon

which they argue summary judgment should be granted. Specifically, the defendants argue that there was no act of negligence because the attorney was acting pursuant to the instructions of the client, Wendy's. The defendants further argue in the alternative, that even assuming, arguendo, that the attorney's conduct was negligent, summary judgment is still appropriate because any alleged negligence did not directly and proximately cause any damages to plaintiff. Essentially, the argument is that the plaintiff did not possess any defense to the underlying action and therefore would have eventually been jointly and severally liable regardless of any deficiencies in the representation by counsel. The Court will first address the issue of the attorney having merely acted pursuant to the directives of his client.

As previously stated, the defendants wish to argue that Attorney Igoe was merely following the client's instructions and as such cannot be found to have acted negligently as a matter of law. This Court disagrees. Surely when Century agreed to permit Wendy's choice of counsel to also represent their interests they assumed there would be continued active representation beyond the simple filing of an answer to the complaint. This they had every right to assume. At the very least, Attorney Igoe should have advised Century, as the situation grew progressively worse for both them and Wendy's, that his inactivity was adversely affecting their position and that a potential conflict of interest existed. He should have further advised Century that it would be in their best interest to retain independent counsel. He failed to do either of these things, and instead opted to do absolutely nothing.

Disciplinary Rule 5–105(B) provides as follows:

(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment on behalf of a client will be or is likely to be adversely affected by his representation of another client, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5–105.

Although the violation of disciplinary rules are not a per se indication of malpractice, they do provide each individual attorney a general stricture under which to tailor his or her actions. DR 5–105(B) specifically provides that multiple representation, as found here when both Wendy's and Century were represented by a single attorney, must not continue when it impinges upon the attorney's ability to make independent professional decisions on behalf of each client without adversely affecting the other client.

Attorney Igoe must have known that his repeated failure to respond to the propounded interrogatories was adversely effecting both Wendy's and Century, however, only Wendy's had given dispensation for this lackadaisical approach. Defendants' argument in support of Attorney Igoe's inaction on behalf of Century was an alleged conversation with Attorney Tofel, where he allegedly stated that he did not want to be bothered with the "details" of the lawsuit. Although the issue of whether this statement was ever even made is in contention, the facts dictate that the circumstances surrounding the lawsuit had eroded to a point that there were no longer mere "details".

Furthermore, it surprises this Court that an attorney and an officer of the court would outright disregard a direct order of the Common Pleas Court that demanded that the interrogatories be filed. Clearly the attorney was in a position where the client's direct instructions and the Court's direct order were dichotomous. This however does not abrogate the attorney's responsibility to follow the order of the Court or at least advise the Court as to his reasoning for his inaction.

The defendant contends his actions were appropriate based upon the directive of his client to not work on the case. Defendant supports this position by citing *McInnis v. Hyatt Legal Clinics*, 10 Ohio St.3d 112, 461 N.E.2d 1295 (1984), which the Defendant states provides that an attorney is negligent when he disobeys the specific instruc-

tions of a client even if the attorney undertakes to do what the law requires.

In the *McInnis* case, the attorney was being sued by a former client because the attorney served process through newspaper publication after having promised the client that the legal matter would "not be in the paper". In *McInnis* the Supreme Court of Ohio adopted the appellate court's conclusion that "[w]hen the defendant attorney elected to cause publication notice of the pendency of the instant divorce, *without notice to his client*, he disobeyed the lawful instruction of his client, breached the terms of his employment agreement, and is culpable to the extent of losses following from his breach and acts." *McInnis*, 10 Ohio St.3d at 112–13, 461 N.E.2d 1295 (emphasis in original) (quoting the court of appeals).

The Court relied, at least in part, upon Ethical Canon 7–8 of the Code of Professional Responsibility, which provides in relevant part as follows:

> A lawyer should exert his best efforts to insure that decisions of his client are made only after the client has been informed of relevant considerations. [T]he lawyer should always remember that the decision whether to forego legally available objectives or methods ... is ultimately for the client and not for himself
> ...

The Court concluded that the attorney should have informed the client of the legal necessity of obtaining service of process through publication. *McInnis* stands for the proposition that when an attorney is confronted with a legal necessity that is in direct contradiction with the client's expressed declarations, the attorney must seek the client's direction after advising the client of the necessary action.

In reviewing the uncontested facts in the case *sub judice* this Court finds *McInnis* to be distinguishable in some respects and enlightening in others. The case is distinguishable given that it dealt with a rule of civil procedure that has been adopted to effectuate service of process. A party that files a complaint is not mandated to serve process. This is required only if the party wishes to go forward with the litigation. Often times a party will file a complaint simply to abide by the relevant statute of limitations while negotiations are in progress. A rule concerning service of process is clearly different from a direct order of the court requiring action by a party. At that point it is no longer an option to be exercised at the attorney or client's whimsy, it is a mandate with dire consequences for its noncompliance.

When the Court of Common Pleas entered an order mandating that the interrogatories be filed, that underlying case and consequently this case, became distinguishable from *McInnis*. Furthermore, *McInnis* did not deal with a case where the attorney was balancing the interests of two separate clients. Attorney Igoe's professional judgment was to be in the best interest of both Wendy's and Century. It is apparent from the facts that Wendy's instructed Attorney Igoe in how they wished for him to proceed. In most cases such an arrangement would be uneventful, however, Wendy's instructions were patently unconventional and iconoclastic and as such should have brought attention to the fact that their method of defending the lawsuit may not be shared by Century.

What *McInnis* may tell us is that at that point the attorney should have advised his clients of the court's order. His failure to do so may give rise to negligence, however, whether that coupled with the numerous other failures to bring to Century Media's attention other revelations in the underlying suit give rise to negligence is a genuine issue of material fact for a jury to decide. For these reasons the defendants' argument that the plaintiff would be unable to show negligence at trial is not well taken. Therefore, the Court will now turn its attention to the defendants' second argument.

■ The second argument of the defendants is that the plaintiffs will be unable to prove the four part legal malpractice test, specifically, whether the attorney's actions caused the alleged damages. The first part of *Jablonski*'s legal malpractice test requires proof that an attorney-client rela-

tionship existed. This does not appear to be in serious contention, as well it should not be, considering that all parties have admitted that Attorney Igoe was retained to represent both Wendy's and Century, and he did so by filing an Answer on each party's behalf in the underlying case. Therefore, it is the Court's conclusion that an attorney-client relationship clearly existed between Century and Defendants Igoe and CPM & A.

The second part of the test requires a finding that there were sufficient facts to show that the attorney's alleged misconduct caused the plaintiff's injury. This question thrusts the Court into the very crux of this matter, in that it raises the question of whether the plaintiff was injured by Attorney Igoe's handling of the underlying matter. The plaintiff argues that the defendants' conduct caused Century to lose the underlying case, specifically, that had the defendant properly forwarded an agency defense, they would not currently have a judgment for over $70,000 against them.

The agency argument, the plaintiff contends, would have prevailed in the underlying action, absolving them of any liability under the agreements to purchase air time. In the alternative, the plaintiff argues that even if an agency relationship is not shown to have existed, the plaintiff was still damaged by the attorney's conduct. The plaintiff explains that if Attorney Igoe had informed Century of the growing potential for divergent interests between Wendy's and Century, this would have enabled Century to retain independent counsel to negotiate a settlement more favorable than a judgment for the entire amount.

In reviewing the supplemental memoranda filed by the respective parties, it becomes apparent that there existed a legitimate agency issue available to Century in the underlying case. That is not to say that Century would necessarily have prevailed on the issue, however, Century was certainly due the opportunity to set forth

the argument and permit a jury to decide whether Century should have been exonerated from all liability. At this time, this Court can only speculate as to the result of a trial had it been held. Nonetheless, this underlying agency issue raises a genuine issue of fact that must be placed before a jury to decide.

It should further be noted, that as the plaintiff points out, the agency issue is not dispositive of the entire case. The plaintiff could very well set forth damages, although an amount would be very difficult to ascertain, which would reflect the harm done by not permitting Century to utilize independent legal acumen to attempt to negotiate a more favorable settlement than a summary judgment for the entire amount.[4] For the above stated reasons, the Defendants Carlile Patchen Murphy & Allison and Michael E. Igoe's Motion for Summary Judgment is hereby DENIED.

## II. MOTION OF PLAINTIFF FOR SUMMARY JUDGMENT ON LIABILITY ONLY

■ Plaintiff argues that as a matter of law, Attorney Igoe's actions in representing the parties gave rise to negligence. Specifically, the plaintiffs state that the defendants were advised of the agency defense and were instructed to assert it, yet the defendants failed to raise any defense whatsoever. Plaintiff states that the defendants' inaction lost the opportunity to defend the case on any basis.

The plaintiffs cite *Howard v. Sweeney*, 27 Ohio App.3d 41, 499 N.E.2d 383 (1985) and *Belfer v. Spiegel*, 18 Ohio App.3d 64, 480 N.E.2d 825 (1984), asserting that in a malpractice action, the plaintiff must prevail when it is proven that the plaintiff possessed a valid defense or claim which would have been successful had the attorney not been negligent. While this Court does not disagree with such a holding, I do not believe that the plaintiffs have proven that an agency argument conclusively would have prevailed before the common

---

**4.** Given that a judgment for the entire amount asked for by the plaintiff in the underlying case constituted a worst case scenario for Century, the Court is inclined to believe that any attempt at settling the underlying case would have been financially beneficial to Century.

pleas court. Clearly there exist genuine issues of material fact as to the capacity with which Century contracted with the broadcasting companies. As such the plaintiff's motion for partial summary judgment on liability only is hereby DENIED.

### III. MOTION OF DEFENDANT DOMENIC FEDERICO FOR SUMMARY JUDGMENT

■ This defendant moves for summary judgment arguing that he did not act as counsel for the plaintiff and as such cannot be held liable for an action in legal malpractice. He further argues that "[t]he fact that he was an officer of the other defendant [Carlile Patchen Murphy & Allison] in the underlying case did not put him in any position of fiduciary responsibility to plaintiff." To these arguments the defendant cites no case law.

In the plaintiff's memorandum contra they respond by arguing that "in one breath, Attorney Federico was entering contracts on behalf of Wendy's Food System, Inc. and was, in fact, still a partner at the Carlile Patchen firm." They conclusively state that "[t]his raises serious questions about conflict of interest and Attorney Federico's involvement in the case." As such, the plaintiff is apparently alleging that Federico's status as an attorney coupled with a potential conflict of interest in his dealings with both CPM & A and Wendy's gives rise to a claim of legal malpractice. Likewise, the plaintiff fails to cite a single case for any of their propositions.

■ A review of the plaintiff's complaint reflects that Defendant Federico is named as being jointly and severally liable under each of the four counts. Count One states that Federico is "an individual of the full age of majority and a citizen of the State of Ohio, and is named a defendant herein." It further provides that "[a]t all times, Domenic Federico was an attorney licensed to practice law in the State of Ohio and engaged in the practice of law in Columbus, Ohio"; "Domenic Federico was at all material times [']of counsel['] to the defendant, Carlile Patchen Murphy & Allison"; and "Domenic Federico was at all material times an employee, agent, officer or owner of Wendy's Food Systems, Inc." However, as far as this Court can decipher, none of these positions create individual liability for Federico under any known legal theory, and certainly not under any of the legal theories upon which this case is based. Count One sounds in negligence and breach of duty, however the plaintiff has alleged no duty owed by Defendant Federico to Century. Count Two is premised upon a theory of a breach of a fiduciary relationship, yet the defendant did not have a fiduciary relationship with the plaintiff. Count Three alleges fraud by the defendants. Placing the Plaintiff arguments in a light most favorable there are arguments that could be made that would most definitely permit a jury to find fraud had occurred and as such, ·the motion for summary judgment as to Count Three is not well taken. The final count, Count Four alleges breach of contract, however, Defendant Federico was never personally a party to the contract.

For the above stated reasons, the Defendant's Motion for Summary Judgement is hereby GRANTED as to Counts One, Two and Four. the motion is DENIED as to Count Three.

IT IS SO ORDERED.